UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| PETER J. MUNOZ, JR., | ) | Case No.: 2:10-cv-01564-RLH-RJJ |
| Plaintiff, | ) | ORDER |
| vs. | ) | (Motion to Dismiss–#20; |
| | ) | Motion for Summary Judgment–#22; |
| HOWARD SKOLNIK, et al., | ) | Motion for an Order–#26; |
| | ) | Motion to Amend Complaint–#29; |
| Defendants. | ) | Motion to Strike–#38) |

Before the Court are Plaintiff Peter J. Munoz's **Motion for Summary Judgment** (#22, filed July 27, 2011), **Motion for an Order Stopping Defendants Counsel and Defendants Employer from Block Plaintiff Access to the Court** (#26, filed Aug. 1), and **Motion to Amend Complaint** (#29, filed Aug. 9). Also before the Court are Defendants M. Adams, C. Burson, L. Green, and T. Hill's **Motion to Dismiss** (#20, filed July 21), for failure to state a claim, and **Motion to Strike** (#38, filed Sept. 2). The Court has also considered the oppositions and replies to these motions.

### BACKGROUND

This is a prisoner civil rights case. Munoz alleges Defendants Adams, Burson, Green, and Hill retaliated against him because he filed a grievance against Green. Munoz's only

1

1  remaining claim is for First Amendment Retaliation against Adams, Burson, Green, and Hill. (#9,
2  Screening Order, 6:13–14). The Defendants have now filed a motion to dismiss that claim. (#20).
3  The Defendants have also filed a motion to strike the sur-reply that Munoz filed for their motion to
4  dismiss. (#38). Munoz also filed a motion for summary judgment (#22), a motion requesting the
5  Court to order the Defendants to re-open the prison library at the Warm Springs Correction Center
6  (#26), and a motion to amend his complaint by adding various exhibits to it (#29). For the reasons
7  discussed below, the Court denies Munoz's motions, grants Defendants' motion to strike, and
8  grants Defendants' motion to dismiss in part and denies it in part.
9                                                    **DISCUSSION**
10 **I.      Defendant's Motion to Strike (#38)**
11              Local Rule 7-2 of the Local Rules of Practice for the United States District Court
12 for the District of Nevada provides for the filing of a motion, a response to a motion, and a reply to
13 a response to a motion. Local Rule 7-2 does not permit the filing of a sur-reply by a party
14 opposing a motion. Therefore, Munoz's sur-reply (#35) filed in connection with Defendants'
15 motion to dismiss is stricken and will not be considered for purposes of resolving Defendants'
16 motion to dismiss (#20).
17 **II.     Defendants' Motion to Dismiss (#20)**
18       **A.      Legal Standard**
19              A court may dismiss a plaintiff's complaint for "failure to state a claim upon which
20 relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short
21 and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.
22 8(a)(2). While Rule 8 does not require detailed factual allegations, it demands "more than labels
23 and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*,
24 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual
25 allegations must be enough to rise above the speculative level." *Bell Atlantic Corp. v. Twombly*,
26 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, a complaint must contain

sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

In *Iqbal*, the Supreme Court recently clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 1949. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's complaint must be dismissed. *Twombly*, 550 U.S. at 570.

**B. Analysis**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "Prison walls do not form a barrier separating inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). "It is well-established that, among the rights they retain, prisoners have a First Amendment right to file prison grievances." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity, [the Ninth Circuit has held] that the proper inquiry asks 'whether an official's acts would chill or

silence a person of ordinary firmness from future First Amendment activities.'" *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999).

Munoz alleges that in January 2010 he filed an administrative grievance against Defendant Green "for constant harassment, verbal and mental abuse" and because Green would "attack Plaintiff's person, religion, family, threaten, humiliate and embarrass the Plaintiff in front of other inmate[s] in [the] general population, as well as making comments to staff and inmate[s] that Plaintiff looks like a terrorist and comments about Plaintiff['s] charge . . . ." (#8, Complaint, ¶ 14). Munoz further alleges that in April 2010 Green told other prison inmates confidential information about Munoz's underlying criminal charge and work history in retaliation for filing the grievance. (*Id.* at ¶ 16, 28).

Munoz alleges that in May 2010 he filed a second administrative grievance against Green for his retaliatory actions but Defendants Adams and Burson rejected the grievance as duplicative of the grievance that Munoz filed in January 2010. (*Id.* at ¶¶ 19, 20, 23). Munoz further alleges that in June 2010 he was involuntarily assigned to administrative segregation by Defendant Hill. Munoz alleges that the "institutions investigative officer Graves" told him he was being segregated because he filed a grievance against Green. (*Id.* at ¶ 22). Finally, Munoz alleges that he was transferred to another correctional facility by Hill. (*Id.* at ¶ 24).

Initially, the Court dismisses the claims against Defendants in their *official* capacity because state officials sued in their official capacity for damages are not persons for purposes of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, the Court finds the Defendants are not entitled to qualified immunity because the prohibition against retaliatory conduct is clearly establish law. *Bruce v. Yist*, 351 F.3d 1283, 1288 (9th Cir. 2003). The Court will now address the substance of Munoz's First Amendment Retaliation claim.

Defendants argue that Munoz's claim against Green fails because Green's alleged retaliatory conduct was, in reality, a mere continuation of the conduct which served, in part, as the basis for the first grievance. Yet, Defendants cite no case law in support of this proposition and

even if it is governing law the Court is not convinced by the argument. First, after the initial grievance was filed, Green allegedly told prison inmates confidential information which he had not previously disclosed, namely, information about Munoz's work history. Thus, Green's alleged retaliatory conduct increased the scope of the conduct which served as the basis for the first grievance.

Second, Munoz alleged that prior to the first grievance Green only "commented" about his charge, but after the grievance was filed Green told other inmates "confidential information" about the charge. (*Id.* at ¶¶ 14, 28). Merely commenting about a prisoner's underlying criminal charge is drastically different than telling other inmates confidential information surrounding that charge. It is plausible that Green told the other inmates additional, more sensitive, information that he had not previously disclosed.

Third, although Green commented about Munoz's underlying criminal charges prior to the first grievance, Green may have told *additional* inmates about the charges, perhaps more dangerous inmates, which would explain why Munoz alleges that Green should have known that the confidential information about his charge and work history could cause Munoz serious injury. (*Id.* at ¶28). And once again, even assuming Green's conduct before and after the first grievance was filed was the same, Defendants cite no law supporting the proposition that similar conduct cannot constitute retaliatory conduct.

Defendants also argue that Munoz's claim against Green fails because he does not specifically allege that Green's conduct would chill a person of ordinary firmness from future First Amendment activity. The Court disagrees. Munoz may not have used the word "chill" in his complaint, or the exact language quoted in the above-referenced standard, but the gravamen of his claim is that Green was disseminating information to other inmates with the purpose of discouraging Munoz from filing future grievances. For example, in count 4 of his complaint, a count which is apparently directed towards the Nevada Department of Corrections and which has been dismissed, he specifically says that it was NDOC's policy to employ persons who would

1    "deny and prevent, as well as to abuse verbally those inmates who sought to assert their rights to
2    file a [*sic*] administrative grievance for wrongful acts . . . ." (*Id*. at ¶55).  A plain reading of
3    Munoz's complaint demonstrates that Munoz is alleging that Green, as well as the other
4    Defendants, engaged in the alleged conduct with the purpose of discouraging Munoz from
5    pursuing grievances against Green.
6            Next, Defendants argue that the Court should dismiss Munoz's claim against Hill
7    because Munoz fails to allege that Hill's actions did not reasonably advance a legitimate
8    correctional goal.  Hill was the correctional officer who allegedly had Munoz placed in segregation
9    and eventually transferred to another prison facility.  However, Munoz admits in his complaint that
10   the confidential information Green was disseminating would place Munoz in serious danger from
11   other inmates.  (*Id*. at 28).  The reasonable inference therefore is that Hill placed Munoz in
12   segregation and had him transferred to protect him from the inmates who were allegedly provoked
13   by Green.  However, Munoz also alleges that the "institutions investigative officer Graves" told
14   Munoz he was being segregated because he filed a grievance against Green.  (*Id*. at ¶ 22).
15   Therefore, although Hill may have theoretically had a legitimate purpose to segregate and transfer
16   Munoz, the complaint alleges that the purpose of his conduct was retaliatory.
17           Finally, Defendants argue that the Court should dismiss Munoz's claim against
18   Burson and Adams because Burson and Adams did not engage in the retaliatory conduct alleged.
19   The Court disagrees.  Again, the gravamen of Munoz's complaint is that Burson and Adams
20   rejected Munoz's second grievance with the purpose of discouraging Munoz from pursuing
21   grievances against Green, specifically, that they were trying to cover up Green's conduct.  The
22   Court finds that these allegations are sufficient to withstand Defendants motion to dismiss.
23           In conclusion, Munoz's claims against Green, Hill, Burson, and Adams *in their*
24   *individual capacity* may proceed.
25   ///
26   ///

AO 72
(Rev. 8/82)

1  III.   **Munoz's Motion for Summary Judgment (#22)**

2  Munoz asks the Court to grant summary judgment for "all of the relief set forth in
3  Plaintiff [*sic*] complaint." He also asks that summary judgment be granted against Howard
4  Skolnik. The Court reminds Munoz that his only remaining claims are for First Amendment
5  Retaliation against Adams, Burson, Green, and Hill in their individual capacity. His claims
6  against Skolnik, as well as all of the other claims in his complaint, have been dismissed by the
7  Court. (#9, Screening Order; See Above).

8  The Court denies Munoz's motion for summary judgment because he has failed to
9  meet his initial burden of showing the absence of a genuine issue of material fact. Fed. R. Civ. P.
10 56. His motion is basically only one page long and it is full of conclusory statements of the law
11 and grossly devoid of any substantive arguments. He directs the Court to "evidence attached to the
12 complaint as exhibits" but there are no such exhibits. And even if there were exhibits attached to
13 the complaint Munoz must attach them to the actual motion for summary judgment for the Court
14 to consider them. Furthermore, the Court suspects that even if these exhibits were attached to the
15 motion there are genuine issues of material fact that are in dispute in this case. Munoz also boldly
16 claims that he has numerous witnesses that confirm his side of the story, yet he does not provide
17 affidavits or other testimony of these witnesses. In short, Munoz's motion is far from adequate,
18 even for a *pro se* motion, for the Court to grant summary judgment on Munoz's First Amendment
19 retaliation claim. Accordingly, the Court denies the motion.

20 IV.   **Munoz's Motion to Amend Complaint (#29)**

21 Munoz wants to amend his complaint by attaching various exhibits to it. He does
22 not want to make any substantive change to his complaint. His obvious motive is to sneak in the
23 exhibits that he meant to attach to his motion for summary judgment so that the Court will
24 consider them when it rules on the motion for summary judgment. Munoz's motion to amend fails
25 because (1) it is not supported by a memorandum of points and authorities, as required by Local
26 Rule 7-2(a); and (2) he does not attach the proposed amended complaint so that it will be complete

in itself, as required by Local Rule 15-1. Therefore, the Court denies the motion and suggests that Munoz consider these Local Rules if he intends to file another motion to amend in the future.

### V. Munoz's Motion for an Order Stopping Defendants Counsel and Defendants Employer from Block Plaintiff Access to the Court (#26)

Munoz asks the Court to issue an order to re-open the law library at the Warm Springs Correctional Center, where Munoz is detained. Apparently the library was closed earlier this year. Munoz wants the library re-opened so he can do his research for this case. His only alternative is to send research requests to another prison library, which he believes will prejudice him because of the delay the requests would cause. Munoz argues that closing the library violates his constitutional right to have access to the courts.

The Court denies Munoz's motion. First, Munoz's motion has nothing to do with his First Amendment retaliation claim against the Defendants. He does not allege that the Defendants had anything to do with the closing of the library. In reality, Munoz's motion is a brand new cause of action against the Warden of the Correctional Center as well as Attorney General Catherine Cortez Masto. Munoz may or may not have a constitutional claim against these individuals for the closing of the library, but he must address that in a separate lawsuit. The motion is frivolous and the Court denies it as such.

### CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (#20) is GRANTED in part and DENIED in part, as follows:

- Granted with respect to Munoz's claim against Adams, Burson, Green, and Hill *in their official capacities*;
- Denied in all other respects.

IT IS FURTHER ORDERED that Munoz's Motion for Summary Judgment (#22) is DENIED.

1  IT IS FURTHER ORDERED that Munoz's Motion for an Order Stopping Counsel and Defendants Employer from Block Plaintiff Access to the Court (#26) is DENIED.

IT IS FURTHER ORDERED that Munoz's Motion to Amend Complaint (#29) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike is GRANTED. Munoz's sur-reply (#35) to Defendants' Motion to Dismiss is stricken.

Dated: December 27, 2011

_____
ROGER L. HUNT
United States District Judge