UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PETER J. MUNOZ,<br><br>               Plaintiff,<br>    v.<br>CHERYL BURSON, et al.,<br><br>               Defendants. | Case No. 2:10-cv-01564-MMD-NJK<br><br>ORDER<br><br>(Defs.' Motion for Summary Judgment – dkt. no. 64)<br><br>(Plf.'s Motion to Strike Motion for Summary Judgment – dkt. no. 71)<br><br>(Defs.' Motion to Strike Plf.'s Supplement to his Complaint – dkt. no.79) |

Before the Court is Defendants Associate Warden Cheryl Burson, Case Worker Tanya Hill, Officer Larr Green, and Officer Minor Adams' Motion for Summary Judgment (dkt. no. 64). Also before the Court is Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment (dkt. no. 71) and Defendants' Motion to Strike Plaintiff's Supplement to his Complaint (dkt. no. 79).

**I.    BACKGROUND**

Pro se Plaintiff Peter Munoz is an inmate at Warm Springs Correctional Center ("WSCC"). He is currently in the custody of the Nevada Department of Corrections ("NDOC"). Munoz alleges that while housed at the Southern Desert Correctional Center ("SDCC") from December 2, 2008, to November 18, 2010, he suffered retaliation for filing grievances against Officer Green.

Munoz interacted with Defendant Green while working as a yard laborer. Defendant Green began his post as Yard Labor Supervisor in September 2009.

However, Green was informed that he would be placed in charge of the Fire Safety Division in the near future.  Green learned that Munoz had experience as a Fire Safety Clerk and recommended him for employment as a yard laborer because he thought Munoz could be an asset to him.  In January 2010, Green assumed the post of Fire Safety Division supervisor and endorsed Munoz's request to be employed as a transitional fire clerk. However, this request was denied by Munoz's case worker because Munoz had previously been found guilty of committing a disciplinary violation.

On January 13, 2010, Munoz filed a grievance against Green, alleging that Green had subjected him to verbal harassment. Specifically, Munoz stated that Green threatened to place Munoz in "the hole" and made innuendos regarding the sensitive nature of the conviction underlying Munoz's prison sentence.  Prison officials denied the grievance.  Munoz filed another grievance against Green in May 2010, stating that Green had disclosed information about Munoz's crime, which led Munoz to fear for his safety.  Prison administrators denied the grievance, and informed Munoz that if he had concerns regarding his safety, he needed to notify the appropriate staff in order for them to take appropriate action.[1]  Munoz submitted another grievance on June 2, 2010.  This grievance repeated the earlier allegation that Green was attempting to place Munoz's life in danger.  Because it was determined to be a duplicate, the prison administration denied the grievance.

Munoz continued to make allegations that individuals were disclosing the nature of his criminal conviction. Prison officials state that these allegations caused the administration to send Munoz to administrative segregation ("ADSEG") on June 24, 2010, where he remained while prison officials investigated Munoz's allegations.  Munoz argues that officials Burson, Adams, and Hill's decision to place him in ADSEG was

---

[1]Munoz asserts that Defendant Burson was involved in denying his prison grievances, and Defendants do not deny Burson's personal involvement in their Motion for Summary Judgment.

made to protect Officer Green and in retaliation for Munoz's January 2010 grievance about Green.

Defendants inform the Court that Munoz's allegations were not substantiated and no action was taken against Defendant Green.

On August 20, 2010, Munoz was transferred from SDCC to Lovelock Correctional Center ("LCC"). The prison administration committee recommended transferring Munoz to LCC because of his repeated allegations that individuals had disclosed or inquired into the nature of Munoz's crime and conviction. LCC traditionally houses individuals with convictions similar to Munoz's.

Munoz filed a Complaint, and after screening pursuant to 28 U.S.C. § 1915A, only his First Amendment retaliation claims against Defendants Green, Adams, Burson, and Hill remain. (Dkt. no. 9 at 6.) Munoz alleges that three actions constituted retaliation for Munoz exercising his First Amendment right to file prison grievances: (1) Green's statements regarding Munoz's conviction; (2) Burson, Hill, and Adams' rejection of his grievances concerning Green's statements, and (3) Burson and Hill's decision to place Munoz in ADSEG in June 2010.

In its December 27, 2011, Order regarding Defendant's Motion to Dismiss, the Court dismissed all claims against Defendants in their official capacities. The Court denied Defendants' Motion in all other respects. (Dkt. no. 48.)

## II. DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S SUPPLEMENT TO HIS COMPLAINT

Defendants move to strike Munoz's supplement to his complaint. The Supplement is a declaration of Ken Roberts, whom Munoz calls an "eye witness." (Dkt. no. 75 at 1.) In his declaration, Roberts states that on April 16, 2010, Green told five prisoners, including himself, about Munoz's work history and the charges against Munoz. (Dkt. no. 75.) Roberts also testified that he witnessed Green mistreating, threatening, and abusing Munoz. (Id. at ¶ 4.)

///

Under Rule 12(f) a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Matter is "immaterial" if it has no bearing on the controversy before the court. *In re 2TheMart.com, Inc Sec. Litig.,* 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). Allegations are "impertinent" if they are not responsive to the issues that arise in the action and that are admissible as evidence. *Id.* "Scandalous" matter is that which casts a cruelly derogatory light on a party or other person. *Id.*

The Court denies Defendants' Motion. The supplement should have been filed as an attachment to Munoz's Opposition to Defendants' Motion for Summary Judgment, but it contains no other deficiencies. Because Munoz is a *pro se* litigant, the Court overlooks this technical error, and considers Roberts' declaration as an exhibit to Munoz's Opposition rather than a supplement to his Complaint. *Accord Brown v. Washington Mut.*, No. 1:12-CV-159, 2012 WL 591927, at *1 (E.D. Cal. Feb. 22, 2012) (noting that the court generally "overlooks technical errors when reviewing pro se pleadings[.]" )

### III. PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Munoz's Motion to Strike (dkt. no. 70) is in reality an Opposition to Defendants' Motion for Summary Judgment. Further, the Court has reviewed the Motion to Strike and the Motion for Summary Judgment, and determines that Munoz's arguments are without merit. Though it misstates certain facts, at times cites inapposite case law, and makes several unavailing arguments, *see infra*, Defendants' Motion for Summary Judgment does not contain redundant, immaterial, impertinent, or scandalous matter. Nor is the Motion untimely, as it was filed on June 1, 2012, the last possible date to file dispositive motions within the deadline. (*See* dkt. nos. 63, 64.)

Further, the Court declines to strike the exhibits attached to the Motion for Summary Judgment. Munoz argues that the exhibits must be stricken because they were not disclosed to him pursuant to Fed. R. Civ. P. 26(a)(1). However, Fed. R. Civ. P. 26(a)(1)(B)(iv) holds that "an action brought without an attorney by a person in the custody of the United States . . ." are exempt from initial disclosures. Therefore,

Defendants may rely on the undisclosed exhibits to support their Motion.  *See also London v. Williams*, No. 07-15631, 2009 WL 567883, at *1 (9th Cir. Mar. 6, 2009)[2] ("The district court properly determined that defendants were under no obligation to disclose an expert witness upon whose declaration the district court relied in granting summary judgment, because London was without an attorney in custody, and the district court had not set a trial date.") (citing Fed. R. Civ. P. 26(a)(1)(B)(iv); Fed. R. Civ. P. 26(a)(2)(C)(i) (requiring disclosure where ordered by trial court or at least 90 days before trial)).

The Motion to Strike is accordingly denied.

## IV.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l*

---

[2] Pursuant to Ninth Circuit Rule 36-3, *London* is not precedent, but may be cited by this Court.  *See also* Fed. R. App. P. 32.1.  The Court accordingly cites *London* not for its precedential value, but because it finds the Ninth Circuit's reasoning on this point of law persuasive.

1  *Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**B.    First Amendment Retaliation and 42 U.S.C. § 1983**

42 U.S.C. § 1983 provides a mechanism for the enforcement of substantive rights conferred by the Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a claim under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

"Even where conditions of confinement do not implicate a prisoner's due process rights, inmates retain other protection from arbitrary state action within the expected conditions of confinement." *Rhodes*, 408 F.3d at 567 (citation, quotation marks, and ellipses omitted). "They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available." *Id.* (citations omitted).

"A prisoner suing prison officials under [§] 1983 for retaliation must allege that he [or she] was retaliated against for exercising his [or her] constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline*."* *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam); *see also Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Austin v. Terhune*, 367 F.3d 1167-1170-71 (9th Cir. 2004).

Of fundamental import to prisoners is their First Amendment right to file prison grievances. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). "Without [such] bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices." *Rhodes*, 408 F.3d at 567. "And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.* (citing, in part, *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995) ("[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes. That retaliatory actions by prison officials are cognizable under § 1983 has also been widely accepted in other circuits.")); *Madewell v. Roberts*, 909 F.2d 1203 (8th Cir.1990); *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir.1987); *Bridges v. Russell*, 757 F.2d 1155 (11th Cir. 1985)).

///

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68.

### C. Green's Alleged Disclosure of Information Regarding Plaintiff's Conviction

Munoz argues that Officer Green disclosed confidential information regarding his prison conviction in retaliation for Munoz filing his initial grievance against Green in January 2010.

Defendants argue that Munoz's claim fails for several reasons: (1) there is no evidence in the record, aside from Munoz's self-serving statements to support the allegation that Green disclosed information about Munoz's crime or conviction; (2) assuming Green made such statements, Munoz cannot prove that the statements were made in retaliation for Munoz's January 2010 grievance; (3) assuming Green made such statements, Munoz cannot demonstrate that the statements were an "adverse action" because the record demonstrates that Munoz believed his fellow inmates knew about the nature of his crime *before* he filed the January 2010 grievance about Green, and therefore Green's statements did not further create a threat of harm (the "causation" argument); and (4) Munoz cannot prove that the allegedly adverse actions actually chilled his First Amendment right to file prison grievances.

#### 1. Lack of Evidence

Defendants argue that "there is no evidence in the record to support [Munoz's] allegation other than [his] speculative, self-serving statements." (Dkt. no. 64 at 5.) Defendants are incorrect. In his June 2, 2010 grievance, Munoz alleges that Green engaged in retaliatory tactics, attempted to place Munoz's life in danger, and told inmates about the details of his conviction. (Dkt. no. 64-2 at 11.) Further, Ken Roberts' declaration states that Officer Green told Roberts and four other inmates about Munoz's

8

1  conviction and underlying crime. (Dkt. no. 75.) Roberts also testified that he witnessed
2  Green mistreating, threatening, and abusing Munoz. (*Id.* at ¶ 4.) Conversely, in Green's
3  affidavit, he states that Munoz's allegations are false and that he was not aware of the
4  details surrounding Munoz's criminal conviction. (Dkt. no. 64-1 at 14, ¶ 5.)

5  Therefore, there is a genuine issue of material fact concerning whether or not
6  Green made the retaliatory statements.

### 2. Whether the Statement was Made in Retaliation

8  Defendants argue that even assuming Green made the retaliatory statements,
9  Munoz cannot prove that Green made his statements in retaliation for the grievance
10 Munoz filed in January 2010. Defendants argue that Munoz has the burden of
11 establishing a link between the alleged statement and his constitutional right, and he
12 cannot do so where there has been a three-month lapse between Munoz's protected
13 conduct – filing his first grievance – and Green's retaliatory statement.[3]

14 The Ninth Circuit has held that "timing can properly be considered as
15 circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th
16 Cir. 1995). However, Defendants cite to no Ninth Circuit cases holding the *opposite* –
17 that a significant lapse in time is evidence that statements were made *without* a
18 retaliatory intent. Even if they had cited to such a case, Defendants have not
19 demonstrated by a preponderance of the evidence that Green's retaliatory statements
20 were made three months after Munoz filed his first grievance. Munoz's first grievance
21 was filed on January 13, 2010. While Defendants state that the retaliatory statement
22 "was allegedly made in April 2010" (dkt. no. 64 at 6), they do not provide any citation to
23 the record to support this contention. In Munoz's June 2, 2010, grievance form, where
24 he complains about Green's retaliatory statements, Munoz does not state when Green
25 made the statements. (*See* dkt. no. 64-2 at 11.) Munoz provides Ken Roberts'

---

[3]Notably, the only case Defendants cite to support this proposition is a 1985 7th Circuit decision, *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985). Defendants' parenthetical misstates the *Benson* court's conclusion.

9

testimony, which states that Green informed Roberts and four other SDCC inmates about Munoz's conviction on April 16, 2010, but Roberts' declaration further states that he was "also a witness to the mistreatment, abuse, and threatening done to the Plaintiff by the Defendant Larr Green." (Dkt. no. 75 at ¶ 4.) This, coupled with the June 2, 2010, grievance, is sufficient evidence that Green may have made several other retaliatory statements regarding Munoz aside from the April 16 statement. Therefore, there is a genuine issue of material fact regarding when Defendant Green made his allegedly retaliatory statements.

### 3.     Causation

Defendants next proffer an odd argument regarding causation. They argue that assuming Green made retaliatory statements, Munoz cannot demonstrate that the statements constitute an "adverse action" because the record demonstrates that Munoz believed his fellow inmates knew about the nature of his crime *before* he filed the grievance about Green, so Green's statements did not *further* create a threat of harm.

Defendants' argument fails. Defendants misunderstand the meaning of "harm" in the First Amendment retaliation context, as the threat of harm need be no more than a chilling effect on Munoz's First Amendment rights. *See Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001). Munoz must prove *not* that he feared for his life in the SDCC because of Green's comments, but rather that he was deterred from filing prison grievances because of Green's statements.[4] Whether or not Munoz's fellow inmates

---

[4] There are several other deficiencies with Defendants' argument. First, the case law Defendants cite to does not support their argument. In *Brondheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009), the Ninth Circuit expressly rejected the notion that a prisoner plaintiff must establish an explicit threat to prevail on a retaliation claim. And in *Resnick v. Hayes*, 313 F.3d 443, 449 (9th Cir. 2000), the prisoner plaintiff did not allege that his First Amendment rights had been chilled or infringed. Second, Defendants cite to no authority or similar cases where a court has held that if a threat of harm already exists, an increase to the threat is not actionable. Third, the record merely demonstrates that Munoz believed his fellow prisoners knew about his crime before Green's allegedly retaliatory statements. Defendants have not demonstrated that the other SDCC prisoners did *in fact* know the nature of Munoz's crime. Therefore, even were the Court to give merit to Defendants' theory, which it does not, Defendants fail to provide facts sufficient to prove their theory.

10

knew about Munoz's criminal charges before Green's statements is irrelevant to this inquiry.

### 4.     Plaintiff's Continued Use of the Grievance Process

Finally, Defendants argue that Munoz cannot prove that the allegedly adverse actions chilled his speech because he continued to file prison grievances after Green made the allegedly retaliatory statements. Munoz did in fact continue to file prison grievances after filing his initial January 2010 grievance about Green's statements. (*See* dkt. no. 64-2.)

Like Defendants' other arguments described above, this argument is without merit.

The Ninth Circuit has stated that "at the pleading stage, we have *never* required a litigant, *per impossibile*, to demonstrate a total chilling of his First Amendment rights to file grievances and to pursue civil rights litigation in order to perfect a retaliation claim." *Rhodes*, 408 F.3d at 568 (emphasis in original).[5] "Speech can be chilled even when not completely silenced." *Id.* "[T]he proper First Amendment inquiry asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Id.* (citing 192 F.3d 1283, 1300 (9th Cir. 1999) (emphasis added)), *vacated on other grounds*, 520 U.S. 1273 (1997) (quoting *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996), (internal quotation marks and citation omitted)). "Because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity[.]" *Rhodes*, 408 U.S. at 569. In *Brown v. Runnels*, No. CIV S-04-0055, 2006 WL 1305277, at *2-3, 6 (E.D. Cal. May 11, 2006) *report and recommendation*

---

[5]The Court notes that Defendants' failure to cite to *Rhodes* as contrary authority to its argument is imprudent and potentially misleading. *Rhodes* is a leading case regarding First Amendment retaliation claims made by prisoners. It is clear to the Court that Defendants understand this, because they cite to *Rhodes* when describing the elements of the cause of action. (Dkt. no. 64 at 5.) Defendants are advised to cite to all pertinent binding authority, *including contrary authority*, in future filings with this Court.

11

*adopted by* No. CIVS040055, 2006 WL 2601649 (E.D. Cal. Sept. 11, 2006), the court applied the *Rhodes* in the summary judgment context.

This Court determines that the *Rhodes* rule should be applied to summary judgment proceedings. *Accord Runnels*, 2006 WL 1305277, at *2-3, 6. Simply because a prisoner continues to file prison grievances after allegedly retaliatory statements or actions are taken does not mean he does so without fear of harm. A determined plaintiff who continues to exercise his First Amendment right to freedom of speech, even though he does so fearing retaliatory behavior from prison administrators, should not be punished for his courage. *Accord Rhodes*, 408 U.S. at 569.

For the foregoing reasons, the Court denies Defendants' Motion for Summary Judgment as it relates to Munoz's retaliation claims against Green.

### D. Defendants Adams and Burson's Grievance Denials

Notably, Munoz also claims that Assistant Warden Burson and Officer Adams denied his grievances about Green in retaliation for Munoz's first grievance, and did so to protect Green and prevent Munoz from filing further grievances against Green. Defendants' Motion does not address this theory of liability. Accordingly, Munoz's claim that Burson and Adams retaliated against Munoz by denying his grievances remains viable.

### E. Plaintiff's ADSEG Confinement

"The Ninth Circuit has expressly held placement in Ad Seg can chill First Amendment activity." *Gray v. Hernandez*, 651 F. Supp. 2d 1167, 1174 (S.D. Cal. 2009) (citing *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997)).

The parties dispute whether Munoz's ADSEG confinement was a retaliatory measure taken in response to his grievances or was merely a routine precaution, taken because of Munoz's continued fear that the nature of his crime had been disclosed to his fellow inmates. Defendants provide case worker Hill's affidavit stating that Munoz was placed in ADSEG because of such fears to support their argument. (Dkt. no. 64-1 at 4, ¶ 18.) Munoz provides circumstantial evidence – that he was placed in ADSEG the same

1 month that he filed a grievance against Green (June 2010) – to support his contention. *See Pratt*, 65 F.3d at 808. Therefore, there is a genuine issue of material fact regarding SDCC's primary motivation for placing Munoz in ADSEG.

However, Defendants argue that should the Court determine that both proffered motivations potentially led to Munoz's ADSEG confinement, it must grant summary judgment in Defendants' favor. In fact, "the Supreme Court held that, in cases in which state action is motivated by both proper and improper reasons, the action may be sustained if it would have been taken even in the absence of the improper reason." *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). As such, Defendants' evidence that Munoz was placed in ADSEG because of his grievances stating that Munoz feared for his safety is sufficient to support summary judgment. Munoz does not provide evidence that his May and June grievances regarding Green's comments were the *only* motivation for his being placed in ADSEG. The evidence described above demonstrates that there is no genuine issue of material fact that Munoz was placed in ADSEG at least in part because he feared for his safety.

Therefore, while Munoz's claim that Burson and Hill retaliated against Munoz for filing his January 2010 grievance against Green remains viable, Munoz can only point to denial of his post-January 2010 grievances, and not his ADSEG confinement, as evidence of such retaliation.

Because the record demonstrates that Case Worker Hill's only involvement in this case was the decision to place Munoz in ADSEG, Hill is accordingly dismissed from this action.

### F. Personal Participation

Defendants argue that the Court should grant its Motion for Summary Judgment as it regards Defendant Adams because there is no evidence that he participated in the alleged retaliation. Defendants make this argument despite attaching a document to their Motion plainly stating that Officer Adams denied Munoz's June 2, 2010, grievance.

(Dkt. no. 64-2 at 11 ("Date Returned: 06/15/2010; Level: IF; Finding: Denied; Assigned to: Adams, Minor; Official Response: this grievance has been answered before, staff denies allegations.").)  Unsurprisingly, Defendants fail to cite to this document in the portion of their Motion discussing Adams' personal participation.  (*See* dkt. no. 64 at 8.)  The Court can therefore only construe Defendants' disingenuousness as an attempt to sneak in a successful argument, in the hopes that the *pro se* Plaintiff and busy Court might not see the exhibit which plainly demonstrates Defendants' argument is meritless.[6]

The Motion for Summary Judgment as it concerns Defendant Adams is therefore denied.

### G. Qualified Immunity

Here, Defendants make a shorter version of the qualified immunity argument they made in their Motion to Dismiss.  That argument was previously rejected by the Court.  (Dkt. no. 48 at 4.)  The Court cited *Ylst*, 351 F.3d at 1288, for the proposition that it is clearly established law that a prison official cannot retaliate against a prisoner for exercising his First Amendment right to file prison grievances. The Court rejects Defendants' effort to repackage an already-rejected argument.

## V. CONCLUSION

Before concluding, the Court makes a further observation.  As described above, Defendants raise several arguments which are tenuous at best if not outright frivolous, cite to misleading and inapposite case law, and at times misrepresent the record.[7]

---

[6]Defendants also argue that even if Munoz could prove Adams denied Munoz's grievances, Adams must be excused from this action because denial of grievances alone is not a basis for a civil rights action. (Dkt. no. 64 at 8.) They cite to *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009), which held that "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  The facts of this case are sufficient to demonstrate a potential connection between Munoz filing his first grievance and Adams' unconstitutional retaliation in the form of denying Munoz's June 2, 2010 grievance.

[7]Defendants' misrepresentation of the record, discussed in part IV(F), is the subject of an accompanying Order to Show Cause as to why Defendants should not be sanctioned for their lack of candor to the Court.

Defendants are instructed to conduct themselves with greater candor in their future filings with this Court.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (dkt. no. 64) is GRANTED IN PART and DENIED IN PART as follows:

- The Motion is GRANTED as it relates to Plaintiff's allegation that his ADSEG confinement constitutes actionable retaliation;
- The Motion is GRANTED as it concerns Plaintiff's claims against Defendant Hill; Plaintiff's claims against Defendant Hill are DISMISSED and THE CLERK OF THE COURT IS HEREBY ORDERED to Terminate Hill as a party; and
- The Motion is DENIED in all other respects.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike (dkt. no. 71) is DENIED;

IT IS FURTHER ORDERED that Defendants' Motion to Strike (dkt. no. 79) is DENIED.

DATED THIS 11th day of January 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE